Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 4884 | DATE | 1/23/2003 |
| CASE TITLE | GREGORY T. ERNST, et al vs. OFFICER WILLIAM ANDERSON, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continued to 2/6/03 at 9:00 a.m. Enter memorandum opinion and order. Pursuant to plaintiffs' voluntary dismissal, Michael Simi's motion to dismiss count VI is granted; Michael Golz's motion to dismiss counts I, III, IV, and VI is granted; and Lyle Richmond and Frank Siciliano's motion to dismiss is granted as to count VI.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 27 2003 | |
| | Notified counsel by telephone. | | date docketed | 23 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| GREGORY T. ERNST, RONALD KEYES, and LEDA KEYES, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 02 C 4884<br>)<br>) Hon. John W. Darrah |
| v. | ) |
| OFFICER WILLIAM ANDERSON; OFFICER PETER CANZONERI, Badge No. 64; OFFICER MICHAEL GOLZ, Badge No. 39; OFFICER C. LOMBARDI; OFFICER RICHMOND; OFFICER F. SICILIANO; OFFICER SIMI; OFFICER JOHN DOE; OFFICER JOHN POE; OFFICER JOHN JOE; OFFICER JOHN LOE; OFFICER JOHN MOE; OFFICER JOHN ROE; OFFICER JOHN SOE; OFFICER JOHN ZOE; VILLAGE OF ROSEMONT, a municipal corporation, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Gregory T. Ernst, Ronald Keyes, and Leda Keyes, filed a ten-count complaint, alleging violations of 42 U.S.C. § 1983 and several state claims against Defendants, Officers William Anderson, Peter Canzoneri, Michael Golz, C. Lombardi, Richmond, F. Siciliano, and Simi; eight unknown Officers, Doe, Poe, Joe, Loe, Moe, Roe, Soe, and Zoe; and the Village of Rosemont (collectively "Defendants").

Defendants have filed the following motions to dismiss: Michael Golz ("Golz"), Lyle Richmond ("Richmond"), and Frank Siciliano ("Siciliano") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint for failure to state a claim against them. Michael Simi

("Simi") and Charles Lombardi ("Lombardi") move, pursuant to Rule 12(b)(6), to dismiss Count III. Simi also moves, pursuant to Rule 12(b)(6), to dismiss Count VI. William Anderson ("Anderson") moves, pursuant to Rule 12(b)(6), to dismiss Counts I, IV, and VI. Finally, Defendants move to dismiss Counts VII, VIII, IX and X.

Plaintiffs voluntarily dismiss Count VI as to Simi; Counts I, III, IV, and VI as to Golz; and Count VI as to Richmond and Siciliano.

For the reasons that follow, Defendants' Motion to Dismiss the Claims of Gregory Ernst is is granted with respect to Count VIII and denied in all other respects; Motion to Dismiss Counts I, IV and VI as to William Anderson is denied; Motion to Dismiss Count III as to Michael Simi and Charles Lombardi and to Dismiss Count VI as to Michael Simi is granted in part and denied in part; and Motion to Dismiss Michael Golz, Lyle Richmond and Frank Siciliano as Defendants is granted in part and denied in part.

## LEGAL STANDARD

When considering a motion to dismiss, the district court must review the complaint liberally, taking as true all well-pled allegations and the inferences that may be drawn from them. *See Sapperstein v. Hager*, 188 F.3d 852, 855 (7th Cir. 1999). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is proper only when it appears beyond doubt that Plaintiff can prove no set of facts to support the allegations in his or her claim. *Strasburger v. Board of Education*, 143 F.3d 351, 359 (7th Cir. 1998).

"Although the Federal Rules of Civil Procedure do not require a plaintiff 'to set out in detail the facts upon which he bases his claim,'... he must 'set out sufficient factual matter to outline the

elements of his cause of action or claim, proof of which is essential to his recovery.'" *Benson v. Cady*, 761 F.2d 335, 338 (7th Cir. 1985) (internal citation omitted). A complaint will not avoid dismissal if it contains "bare legal conclusions" absent facts outlining the basis of the claims. *Perkins v. Silverstein*, 939 F.2d 463, 467 (7th Cir. 1991).

## BACKGROUND

For purposes of this motion to dismiss, the following allegations are taken as true.

Gregory Ernst ("Ernst") is a resident of Hobart, Indiana, and has worked as an Internal Affairs Officer for the Cook County Sheriff's Department for the past seven years. Ronald Keyes ("Mr. Keyes") and his wife Leda Keyes ("Mrs. Keyes"), are residents of Lyons, Illinois. The Defendant Officers are all employees of the Village of Rosemont.

On July 10, 2001, at approximately 7:00 p.m., Ernst and his wife, Ronald and Leda Keyes, and Martin and Linda Strebs arrived by limousine at the Allstate Arena in Rosemont, Illinois, to attend a concert. The couples had tickets for seats in different sections of the arena.

Shortly after the concert began, Mr. Keyes and Mr. Strebs met in the area where the Keyes were sitting to go for beer. At this time, a couple seated to the right of the Keyes began smoking marijuana. Police officers were dispatched to remove the couple who were smoking marijuana.

When Strebs and Keyes returned to the Keyes' seats, Mr. Strebs was grabbed by Canzoneri and removed from the concert area. Several officers then grabbed Mr. Keyes from his seat. Mrs. Keyes told the officers that her husband's feet were trapped under the chair, but the officers ignored her and continued to pull Mr. Keyes.

When the officers finally removed Mr. Keyes from his seat, they pulled him over a rail and then threw him into a row of chairs, where he landed on his right side, aggravating an earlier injury

to his back and shoulder. The officers then kneed Mr. Keyes in his left side, and Simi punched Mr. Keyes in the stomach several times. Simi attempted to kick Mr. Keyes in the groin several times.

During this time, Mrs. Keyes told the officers twice that her husband was not the person that they were looking for, but Lombardi responded by knocking her down. Mr. Keyes also pled with the officers to stop beating him. The officers then handcuffed Mr. Keyes and carried him to the lobby.

The officers stopped beating Mr. Keyes when Lombardi and Canzoneri asked him if he was a police officer. Mr. Keyes told them that he was not a police officer. Canzoneri removed Mr. Keyes' wallet to verify that Mr. Keyes was not a police officer. Once the officers were sure that Mr. Keyes was not a police officer, they resumed beating him. Lombardi and Canzoneri took turns throwing Mr. Keyes backwards on the ground and shoving his face into a concrete wall.

Canzoneri then told Mr. Keyes that he was being taken to jail. A Rosemont police car arrived at this time; but before entering the car, Canzoneri punched Mr. Keyes in the face several times, throwing his left elbow into the side of Mr. Keyes' head. When Mr. Keyes saw that Canzoneri was attempting to strike him again, he dove into the back of the police car. The driver of the police car struck Mr. Keyes in the head and said, "You're going to my jail, and you're not going to like it."

At the Rosemont Police Station ("the station"), Mr. Keyes was placed in a room with Canzoneri. Another officer removed Mr. Keyes' handcuffs. Canzoneri then said to Mr. Keyes, "I could kick your fucking ass." Mr. Keyes then told Canzoneri that Canzoneri was wrong for beating him up and that he would not fight with Canzoneri. Canzoneri then called for three other officers.

When these officers arrived, they told Mr. Keyes to stand, which he did. Canzoneri then removed Mr. Keyes' watch and stomped on it, shattering the glass face. Canzoneri then struck Mr. Keyes in the back of the head.

Mr. Keyes was then taken from the room and left in a chair in the hallway. While sitting in the hallway, Mr. Keyes heard officers stating that his record was "clean" and that they had no grounds to hold him. However, these officers were instructed to put him in a cell and told that they would figure out what to do with him later. Canzoneri entered Mr. Keyes' cell and placed him in handcuffs. Canzoneri then asked Mr. Keyes if the handcuffs were "tight enough". When Mr. Keyes said that they were, Canzoneri replied, "too bad."

Canzoneri and Golz transported Mr. Keyes to Resurrection Hospital. Before they entered the hospital, Canzoneri struck Mr. Keyes in the back of the head. Eventually, the officers informed Mr. Keyes that he had been taken to the hospital for an exposure test. Mr. Keyes voluntarily submitted to a urine drug screen, which was negative for drugs.

Meanwhile, when the concert ended, Ernst met Mrs. Keyes and learned that Mr. Keyes had been taken to the station. When they arrived at the station, they learned that Mr. Keyes had been transported to the hospital. When they arrived at the hospital, Ernst and Mrs. Keyes noticed that Mr. Keyes had various injuries and blood on his body and clothing. Ernst and Mrs. Keyes were told by the officers that Mr. Keyes was not under arrest. Ernst asked when they could bail Mr. Keyes out of jail and was told that the Rosemont Police was not sure what they were going to do with Mr. Keyes.

Later that night, an officer told Mrs. Keyes that her husband would be released from jail that night because witnesses had come forward and stated that Mr. Keyes was not smoking marijuana or

disturbing the peace. Despite his knowledge of these witnesses, Anderson announced that Mr. Keyes would be kept overnight and released the next day. Mr. Keyes received further medical treatment for injuries caused by the beating by the officers.

Mr. Keyes was charged with battery against a police officer, but all charges were dropped after a bench trial. The judge ruled that Mr. Keyes and Martin Strebs were wrongfully removed from the Allstate Arena.

On July 11, 2001, Canzoneri wrote a memorandum ("the memorandum") on Rosemont Police Department letterhead in which he falsely stated that Ernst was in the company of offenders who were using marijuana and disturbing the peace at the Allstate Arena, had used his position as an Internal Affairs officer in an attempt to get Mr. Keyes released from police custody without being charged, and incited Mr. Keyes to become combative when Ernst failed to get Mr. Keyes released. The memorandum was sent to Ernst's employer, Chief Weinstein of the Cook County Sheriff's Department. Upon returning to work, Ernst discovered that his superior had removed all his belongings from his work station and that his employer had informed his partner that Ernst had been terminated. Ernst also lost significant work privileges, including the use of a Cook County Sheriff's vehicle.

Some time after the memorandum was sent, Anderson threatened to press fabricated battery and other charges against Ernst if Ernst or any of his friends involved in the incident on July 10, 2001, pursued any litigation against the Rosemont Police Department or any of its employees.

An investigation by the Cook County Sheriff's Office of the Inspector General revealed that Canzoneri's allegations were unwarranted and unfounded and that there was no basis for the threat

to pursue battery charges against Ernst.

## DISCUSSION

*Motion to Dismiss the Claims of Gregory Ernst*

Defendants move to dismiss the counts of the complaint pled by Ernst (Counts VII, VIII, IX and X), arguing that this Court should decline to exercise supplemental jurisdiction over Ernst's state law claims because Ernst's state law claims do not arise out of the same occurrence as the federal claims of the Keyes.

Section 1367 of Title 28 of the United States Code provides that:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Rule 20 of the Federal Rules of Civil Procedure provides that:

> [a]ll persons may join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action.

Fed.R.Civ.P. 20(a). For joinder of plaintiffs under Rule 20(a), "there must be a right to relief arising out of the same transaction or occurrence, or series of transactions or occurrences" and "a question of law or fact common to all the plaintiffs." *Hawkins v. Groot Indus., Inc.*, 210 F.R.D. 226, 230 (N.D. Ill. 2002). "[T]he district court has wide discretion when deciding whether joinder of parties is proper." *Hawkins*, 210 F.R.D. at 230.

The requirements of Rule 20(a) are met by Ernst's claims. Ernst alleges four state law claims against Defendants: (1) defamation (Count VII), (2) official misconduct (Count VIII), (3) tortious

interference with employment contract (Count IX), and (4) a claim of respondeat superior against the Village of Rosemont for the actions of the officers (Count X). Counts VII through X and the Keyes' excessive force and false arrest claims arise out of the occurrence on July 10, 2001, the beating of Mr. and Mrs. Keyes and the detention of Mr. Keyes.

Furthermore, there are questions of law or fact common to all the Plaintiffs. Ernst's defamation, official misconduct, and tortious interference with employment contract claims involve similar questions of fact as the Keyes' excessive force and false arrest claims. For example, Ernst's defamation claim[1] involves whether Ernst was in the company of individuals who were using marijuana and disturbing the peace at the Allstate Arena (Mr. Keyes), whether Mr. Keyes was using drugs that night, and whether Ernst incited Mr. Keyes to become combative. Ernst's tortious interference with his employment contract claim[2] involves questions of fact as to Ernst's presence and observation of Mr. Keyes after the alleged beating. The Keyes' excessive force claims involves "'whether the officers' actions [were] objectively reasonable in light of the facts and circumstances confronting them.'" *Smith v. Ball State Univ.*, 295 F.3d 763, 770 (7th Cir. 2002) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Mr. Keyes' false arrest claim involves whether the officers had probable cause to arrest him, that is, whether the officers "'reasonably believe[d], in light of the

---

[1] To state a claim for defamation, a plaintiff must allege: (1) the defendant made a false statement about the plaintiff, (2) unprivileged publication to a third party with fault by the defendant, and (3) the publication damaged the plaintiff. *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1020 (2001).

[2] Under Illinois law, the elements of a tortious interference with contract claim include: (1) the existence of a valid and enforceable contractual relationship, (2) the defendant's knowledge of such contractual relationship, (3) the defendant's intentional and unjustified inducement of a breach of said contractual relationship, (4) breach by the other party caused by the defendant's conduct, and (5) damages. *Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998).

facts and circumstances within their knowledge at the time of the arrest, that the suspect had committed or was committing an offense.'" *United States. v. Carrillo*, 269 F.3d 761, 766 (7th Cir. 2001) (quoting *United States v. Hayes*, 236 F.3d 891, 894 (7th Cir. 2001)). The Keyes' § 1983 claims also involve questions of fact as to whether Mr. Keyes was using drugs and disturbing the peace at the Allstate Arena on July 10, 2001, and whether Mr. Keyes became combative at the station. Thus, the requirements of Rule 20(a) are met; and the Court will exercise supplemental jurisdiction over Ernst's state law claims. Therefore, Defendants' Motion to Dismiss Counts VII, VIII, IX, and X on this ground is denied.

Additionally, Defendants move to dismiss Count VIII (official misconduct), arguing that a civil remedy for official misconduct does not exist. Under Illinois law:

> [a] public officer or employee commits misconduct when, in his official capacity, he commits any of the following acts:
> (a) Intentionally or recklessly fails to perform any mandatory duty as required by law; or
> (b) Knowingly performs an act which he knows he is forbidden by law to perform; or
> (c) With intent to obtain a personal advantage for himself or another, he performs an act in excess of his lawful authority; or
> (d) Solicits or knowingly accepts for the performance of any act a fee or reward which he knows is not authorized by law.
> A public officer or employee convicted of violating any provision of this Section forfeits his office or employment. In addition, he commits a Class 3 felony.

720 Ill. Comp. Stat. 5/33-3 (2002). Civil actions cannot be brought for violation of the Illinois Criminal Code, *see Jacobs v. Paynter*, 727 F. Supp. 1212, 1220 (N.D. Ill. 1989), and section 5/33-3 does not authorize a private right of action. Therefore, Count VIII is dismissed with prejudice.

*Anderson's Motion to Dismiss Counts I, IV and VI*

Anderson argues that dismissal of Counts I, IV, and VI is appropriate because those counts

do not allege any specific conduct on his part that would entitle the Keyes to relief.

Count I is an excessive force claim under § 1983. Count I alleges that the Defendant Officers subjected Mr. Keyes to an unreasonable and unjustified attack. Count I incorporates the earlier factual allegations that do not single out Anderson as one of the officers who actually laid his hands on Mr. Keyes. However, this is not fatal to Mr. Keyes' excessive force claim against Anderson.

> [W]hile it is true that a plaintiff must establish a defendant's personal responsibility for any claimed deprivation of a constitutional right, a defendant's direct participation in the deprivation is not required. . . . "An official satisfies the personal responsibility requirement of § 1983 if she acts *or fails to act* with a deliberate or reckless disregard of the plaintiff's constitutional rights." *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Under this rule, police officers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so have been held liable.

*Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000) (citations omitted). The complaint alleges that Mr. Keyes was beaten by several Rosemont police officers at the Allstate Arena, in a police car, at the station and at Resurrection Hospital. The complaint alleges that Anderson was present at the station where some of the alleged beatings occurred. Construing any ambiguities in the complaint in favor of the plaintiff, *Kelly*, 135 F.3d 1202 at 1205, the allegations in the complaint reasonably support the inference that Anderson stood by and did nothing while the named officers beat Mr. Keyes although he could have prevented it, which is actionable conduct under § 1983. *Miller*, 220 F.3d at 495 (noting that "whichever officer was not directly responsible for the beating was idly standing by"). It appears that Mr. Keyes can prove some set of facts to support the allegations in his claim, *Strasburger*, 143 F.3d at 359; and Anderson's Motion to Dismiss is denied as to Count I.

Count IV alleges a state law claim for assault and battery. "In Illinois, assault is defined as an 'intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under such

circumstances as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented.' . . . Illinois law defines battery 'as the willful touching of another or a successful attempt to commit violence on the person of another.'" *Ofoma v. Armour*, No. 97 C 6420, 1998 WL 409381, at *4 (N.D.Ill. June 25, 1998) (quoting *Parrish v. Donahue*, 110 Ill. App. 3d 1081, 1083 (1982)). Count IV alleges that "officers" beat Mr. Keyes at the Allstate Arena and that an officer who was driving the police car that transported him to the station struck him in the head and said, "You're going to my jail, and you're not going to like it." These allegations reasonably support the inference that Anderson was one of the officers who created a well-founded fear of imminent peril on the part of Mr. Keyes and who struck Mr. Keyes at the Allstate Arena. Thus, Count IV adequately pleads a claim for assault and battery against Anderson; and, therefore, Anderson's Motion to Dismiss is denied as to Count IV.

Count VI alleges a state law claim for malicious prosecution. "To state a claim of malicious prosecution, a plaintiff must allege facts showing: (1) the defendant's commencement or continuation of an original criminal or civil proceeding[,] (2) the termination of the proceeding in the plaintiff's favor[,] (3) the absence of probable cause for the proceeding[,] (4) the defendant's malice[,] and (5) the plaintiff's damages." *Randall v. Lemke*, 311 Ill. App. 3d 848, 850 (2000). The complaint alleges that Mr. Keyes was not smoking marijuana or disturbing the peace at the Allstate Arena, that Anderson announced that Mr. Keyes would be detained overnight even though Anderson knew that Mr. Keyes had not broken any laws, that criminal proceedings were initiated against Mr. Keyes, that all charges against Mr. Keyes were dropped after a bench trial, and that Mr. Keyes suffered physical and mental injuries as a result of the prosecution. These allegations reasonably support the inference that Anderson instituted a criminal proceeding against Mr. Keyes without

-11-

probable cause and with malice. Thus, Count VI adequately pleads a claim for malicious prosecution; and, therefore, Anderson's Motion to Dismiss is denied as to Count VI.

*Simi & Lombardi's Motion to Dismiss Count III*

Simi and Lombardi argue that they should be dismissed from Count III because Count III does not allege any specific conduct on their part that would entitle Mr. Keyes to relief for a claim of false arrest.

In order to state a claim for false arrest under § 1983, Mr. Keyes must plead that the officers lacked probable cause for the arrest. *Myatt v. City of Chicago*, 816 F. Supp. 1259, 1266 (N.D. Ill. 1992). The complaint alleges that (1) "officers" were dispatched to remove a couple near the Keyes who were smoking marijuana in the Allstate Arena; (2) Simi was one of the officers who arrived at the scene and attempted to kick Mr. Keyes in the groin; (3) Lombardi knocked Mrs. Keyes down when she told him that her husband was the wrong man; and (4) "officers" handcuffed Mr. Keyes, who then was taken to the police station. These allegations reasonably support the inference that Simi and Lombardi were involved in Mr. Keyes' arrest as they were "officers" at the scene of Mr. Keyes' arrest. Count III adequately pleads a claim of false arrest under § 1983 against Simi and Lombardi; and, therefore, their Motion to Dismiss Count III is denied.

*Richmond & Siciliano's Motion to Dismiss Counts I, III, & IV*

Richmond and Siciliano argue that they should be dismissed from Count I because Count I does not allege any specific conduct on their part that would entitle Mr. Keyes to relief for a claim of excessive force. As discussed in greater detail earlier in this opinion, a police officer who has a realistic opportunity to prevent a fellow officer from using excessive force but fails to do so can be held liable under § 1983. *Miller*, 220 F.3d at 495. The complaint alleges that Mr. Keyes was beaten

-12-

by several Rosemont police officers at the Allstate Arena, in a police car, at the station, and at the hospital. The complaint also alleges that Richmond and Siciliano are Rosemont police officers. Construing all ambiguities in the complaint in favor of Mr. Keyes, the allegations in the complaint reasonably support the inference that Richmond and Siciliano either used excessive force against Mr. Keyes or stood by and did nothing while the named officers beat Mr. Keyes. Thus, Count I adequately pleads a claim for excessive force against Richmond and Siciliano; and, therefore, their Motion to Dismiss is denied as to Count I.

Richmond and Siciliano argue that they should be dismissed from Count III because Count III does not allege any specific conduct on their part that would entitle Mr. Keyes to relief for a claim of false arrest. The complaint alleges that (1) "officers" were dispatched to remove a couple near the Keyes who were smoking marijuana in the Allstate Arena; (2) "officers" handcuffed Mr. Keyes, who was then taken to the police station; and (3) Richmond and Siciliano are officers of the Rosemont Police Department. These allegations reasonably support the inference that Richmond and Siciliano were involved in Mr. Keyes' arrest as they may have been "officers" at the scene of Mr. Keyes' arrest. Count III adequately pleads a claim of false arrest under § 1983 against Richmond and Siciliano; and, therefore, their Motion to Dismiss Count III is denied.

Richmond and Siciliano argue that they should be dismissed as defendants from Count IV because Count IV does not allege that Richmond or Siciliano ever engaged in conduct toward Mr. Keyes that would constitute assault or battery.

As was discussed in greater detail above, an assault is "an intentional, unlawful offer of corporal injury by force . . . as to create a well-founded fear of imminent peril, coupled with the apparent present ability to effectuate the attempt if not prevented" and a battery is "the willful

touching of another or a successful attempt to commit violence on the person of another." *Ofoma v. Armour*, 1998 WL 409381, at *4 (internal quotation marks omitted). Count IV alleges that "officers" beat Mr. Keyes at the Allstate Arena and that an officer who was driving the police car that transported him to the station struck him in the head and said, "You're going to my jail; and you're not going to like it." These allegations reasonably support the inference that Richmond and Siciliano may have been two of the officers who created a well-founded fear of imminent peril on the part of Mr. Keyes and who struck Mr. Keyes at the Allstate Arena. Thus, Count IV adequately pleads a claim for assault and battery against Richmond and Siciliano; and, therefore, their Motion to Dismiss is denied as to Count IV.

*Defendants' Motion to Dismiss Unknown Defendants*

Defendants also argue that dismissal of the unknown defendants is proper because it is unnecessary to name a defendant until their identity can be learned through discovery or through the aid of the trial court.

The Seventh Circuit has held that "when . . . a party is ignorant of defendants' true identity, it is unnecessary to name them until their identity can be learned through discovery or through the aid of the trial court." *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980). The use of a fictitious name is left to the discretion of the district court. *K.F.P. v. Dane County*, 110 F.3d 516, 519 (7th Cir. 1997).

In *Billman v. Indiana Department of Corrections*, 56 F.3d 785 (7th Cir. 1995), the plaintiff, a prison inmate, brought a § 1983 action against the Department of Corrections and prison officials and guards for cruel and unusual punishment in violation of the Eighth Amendment. The Seventh Circuit held that dismissal of the action as frivolous was improper because the plaintiff had made

"allegations that if true indicate[d] that someone employed by the prison system ha[d] inflicted cruel and unusual punishment on him . . . [and] the circumstances [were] such as to make it infeasible for the prisoner to identify that someone before filing his complaint." *Billman*, 56 F.3d at 789. The Seventh Circuit further stated that this principle "applies to any case in which, usually because the plaintiff has been injured as the consequence of the actions of an unknown member of a collective body, identification of the responsible party may be impossible without pretrial discovery." *Billman*, 56 F.3d at 789. Similarly, here, the Keyes are not able, without pretrial discovery, to ascertain the identities of the officers who were involved in the events on July 10, 2001. Therefore, Defendants' Motion to Dismiss the Unknown Defendants is denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss the Claims of Gregory Ernst is denied; William Anderson's Motion to Dismiss Counts I, IV and VI is denied; Michael Simi and Charles Lombardi's Motion to Dismiss Count III is denied; Lyle Richmond and Frank Siciliano's Motion to Dismiss Counts I, III, and IV is denied; and Defendants' Motion to Dismiss the Unknown Defendants is denied. Defendants' Motion to Dismiss Count VIII is granted for failure to state a claim upon which relief can be granted.

Pursuant to Plaintiffs' voluntary dismissal, Michael Simi's Motion Dismiss Count VI is granted; Michael Golz's Motion to Dismiss Counts I, III, IV, and VI is granted; and Lyle Richmond and Frank Siciliano's Motion to Dismiss is granted as to Count VI.

**IT IS SO ORDERED.**

Date: January 23, 2003

John W. Darrah, Judge
United States District Court