# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY T. ERNST,<br>RONALD KEYES, and LEDA KEYES, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No: 02 C 4884 |
| OFFICER WILLIAM ANDERSON,<br>OFFICER PETER CANZONERI,<br>OFFICER C. LOMBARDI,<br>OFFICER F. SICILIANO,<br>OFFICER RICHMOND,<br>OFFICER SIMI, and<br>VILLAGE OF ROSEMONT,<br>a municipal corporation, | ) ) ) ) ) ) ) ) ) | Judge John W. Darrah |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, including Gregory T. Ernst, filed suit against multiple Defendants, including Officer Peter Canzoneri. Ernst alleges, in Counts VII and VIII, that Canzoneri and another Defendant, Captain William Anderson, conspired to defame and commit tortious interference with Ernst's employment contract by sending a memorandum to Ernst's superior. Presently before the Court is Canzoneri's Motion for Summary Judgment as to Counts VII and VIII of Plaintiffs' Second Amended Complaint. For the following reasons, that motion is granted in part and denied in part.

## LEGAL STANDARD

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

2

## **BACKGROUND**

The undisputed facts, for the purposes of this motion, taken from the parties' Local Rule

56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def's 56.1")

and exhibits, are as follows.

Ernst, an internal affairs officer at the Cook County Department of Corrections, attended

a concert in Rosemont, Illinois, with a number of people, including Plaintiff Ronald Keyes. Pl.'s

56.1 ¶ 10, Second Am. Compl. ¶ 13. At the concert, an altercation allegedly ensued between

Rosemont police officers and Keyes. Second Am. Compl. ¶¶ 15-33. As a result of the

altercation, Keyes was transported to the hospital. Second Am. Compl. ¶ 34. Ernst arrived at the

hospital and allegedly had some interaction with Officer Canzoneri. Pl.'s Ex. H.

The next day, Officer Canzoneri drafted a memorandum complaining of Ernst's behavior

at the hospital. Pl.'s Ex. H. The memorandum states, in pertinent part:

> Sir, in relation to listed report, while at Resurrection Hospital to get a blood draw
> on [Keyes], I came in contact with a Greg Ernst who identified himself as a Cook
> County Sheriff Internal Affairs Division. Ernst said he was a friend of [Keyes]
> and asked if we could do anything to help out his friend. I advised Mr. Ernst that
> we needed the offender to cooperate at which time he requested to see his friend
> and stated that he would calm him down. I then escorted Ernst and [Keyes'] wife
> to ER Room #5. Upon arrival, Ernst explained to [Keyes] why we needed the
> blood test. Ernst then stated to [Keyes] "Don't worry about it, we'll get these
> guys later. I've got a female Rosemont Officer who is going to testify against
> them." I asked Mr. Ernst to leave due to his statements that were now provoking
> [Keyes] into becoming more combative. Ernst refused but finally left.
>
> Ernst returned on several occasions and continued to incite [Keyes] and I
> continually asked him to leave. Ernst was intoxicated and continually made
> unprofessional remarks to [Rosemont Officers].
>
> Ernst stated to me that if I wanted to "beef" him, to call his chief. I told him that
> wasn't necessary but he wasn't helping the situation.

3

> Mr. Ernst, being a law enforcement official, acted in a totally unprofessional way. **He was seen in the company of the offenders who were using marijuana and causing a disturbance at the [concert].** He then acts as a peace maker and used his law enforcement affiliation in an attempt to get his friend released. When this is unsuccessful, he incited his friend [Keyes] into being combative with our officers. **I'd like to follow up with his department and lodge a formal complaint.**

Pl.'s Ex. H (emphasis added). Officer Canzoneri placed the memorandum in Captain Anderson's mailbox. Def.'s 56.1 ¶ 6. Captain Anderson then forwarded the memorandum to Ernst's superior, Chief Saul Weinstein, without talking to any other officers about the memorandum. Pl.'s Ex. G, Anderson Dep., at 15-18.

Canzoneri did not see Ernst in the company of people smoking marijuana or causing a disturbance at the concert; instead, he reported these actions from what other officers told him. Pl.'s Ex. C, Canzoneri Dep. at 81; Pl.'s Ex. E, Swaine Investigation at 3. These allegations in the Ernst memorandum were later determined to be unfounded in a Cook County Sheriff's Department investigation. Pl.'s Ex. E, Swaine Investigation at 6-7.

No disciplinary actions were taken against Ernst as a result of Canzoneri's memorandum, and Ernst has not been denied any salary decreases. Def.'s 56.1 ¶¶ 11-12. Prior to the alleged incidents, however, Ernst was able to work overtime on the after-duty call; and he had access to a vehicle through work that he could use for personal purposes while assigned to the after-duty call. Def.'s 56.1 ¶¶ 13, 15; Pl.'s Ex. A, Ernst Dep. at 116. After the incidents, Ernst lost these benefits. *See* Def.'s 56.1 ¶¶ 13, 15.

Chief Weinstein made the decision to only have two investigators on after-duty call status. Def.'s Ex. D, Weinstein Dep. at 17-18. The two most senior investigators who wanted to work on the after-duty call received this assignment. Def.'s 56.1 ¶ 14. At the same time, Chief

4

Weinstein re-allocated the vehicles so that the two officers working the after-duty call would have permanent use of the vehicles. Def.'s 56.1 ¶ 15; Def.'s Ex. D, Weinstein Dep. at 17-18. The Cook County Sheriff also lost use of one of these vehicles as a result of this change. Def.'s 56.1 ¶ 15.

## ANALYSIS

### *Tortious Interference with Contract*

Canzoneri seeks summary judgment on the conspiracy to commit tortious interference with contract claim because, among other reasons, Ernst cannot prove that Canzoneri's wrongful acts caused the breach of contract. A conspiracy, by itself, does not constitute an actionable claim unless there is some underlying conduct by the conspiracy which is tortious. *Champion Parts, Inc. v. Oppenheimer & Co.*, 878 F.2d 1003, 1008 (7th Cir. 1989). To recover on a claim for tortious interference with contractual rights, a plaintiff must show: (1) a valid and enforceable contract existed between the plaintiff and a third party, (2) the defendant was aware of this contract, (3) the defendant intentionally and unjustifiably induced a breach of this contract by the third party, (4) the breach was caused by the defendant's wrongful acts, and (5) the plaintiff was damaged by the breach. *E.g., Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 731 (7th Cir. 1999).

Ernst cannot show that Canzoneri's actions led to the breach of his employment contract. According to Ernst, he lost after-duty overtime call benefits and the use of a work vehicle as a result of Canzoneri's participation in forwarding the memorandum to Ernst's superior, Chief Weinstein. However, it is undisputed that Chief Weinstein decided to only have the two most senior investigators who wanted to work overtime on after-duty call status. It is also undisputed

5

that Chief Weinstein only allowed these two investigators to have access to the work vehicles;
even the Cook County Sheriff lost use of one of these vehicles. Ernst provides no affidavits,
depositions, answers to interrogatories, or admissions to the contrary. Accordingly, Canzoneri is
granted summary judgment as to Count VIII.

### *Defamation*

Canzoneri also seeks summary judgment on the conspiracy to commit defamation claim
because: (1) no conspiracy existed; (2) he is shielded from liability under the intracorporate
conspiracy doctrine; (3) Canzoneri did not publish the memorandum; (4) the memorandum
which Canzoneri gave to his superior, Captain Anderson, is protected by a conditional privilege;
(5) the "gist" of the memorandum is true; and (6) Canzoneri's conduct is protected under the
Illinois state immunity statute. To prove a defamation claim in Illinois, a plaintiff must show that
he incurred damages by the unprivileged publication of a false statement. *E.g.*, *Haywood v.
Lucent Techs.*, 323 F.3d 524, 533 (7th Cir. 2003).

Canzoneri first argues that no conspiracy existed because there was no meeting of the
minds between Canzoneri and Anderson regarding any alleged defamation; Canzoneri and
Anderson both testified that there was no conspiracy to defame Ernst. To prove a claim of
conspiracy in Illinois, there must be some agreement between two or more people to commit a
tortious act. *See Bressner v. Ambroziak*, 379 F.3d 478, 483 (7th Cir. 2004). However,
conspiracies may be proven by circumstantial evidence. *Bogosian v. Bd. of Educ. of Cmty. Unit
Sch. Dist. 200*, 134 F. Supp. 2d 952, 960 (N.D. Ill. 2001).

6

Both Captain Anderson and Canzoneri had reasons to be concerned with Ernst, an internal affairs officer, and to form an agreement to defame Ernst. Some Rosemont officers, including Canzoneri, were alleged to have been involved with an unjustified altercation with Ernst's friend, Keyes. Evidence of this agreement is found in Canzoneri's memorandum, which stated that Canzoneri wished to follow up his complaint with Ernst's superiors even though Canzoneri did not have first-hand knowledge of some of Ernst's behavior. Captain Anderson forwarded that memorandum to Chief Weinstein without talking to any other officers regarding the memorandum. Canzoneri later repeated his charges to a Cook County investigator, while Captain Anderson threatened to file battery or obstruction of justice charges against Ernst if Keyes sued Rosemont. Pl.'s Ex. E., Swaine Investigation. Therefore, Ernst has presented circumstantial evidence demonstrating a genuine issue of material fact exists as to whether a mutual agreement existed between Canzoneri and Captain Anderson to defame Ernst.

Canzoneri also argues that even if a conspiracy existed, he is shielded from liability under the incorporate conspiracy doctrine. However, Canzoneri has only presented cases demonstrating that the intracorporate conspiracy doctrine applies to federal conspiracy issues, such as claims arising under 42 U.S.C. §§ 1983 and 1985. *See Travis v. Gary Cmty. Mental Health Ctr.*, 921 F.2d 108, 110 (7th Cir. 1990); *Tabor v. City of Chicago*, 10 F. Supp. 2d 988, 994 (N.D. Ill. 1998). Canzoneri has not presented any cases showing that Illinois applies the intracorporate doctrine to Illinois civil claims for conspiracy.

Canzoneri next contends that he did not publish the memorandum. According to Canzoneri, the only action that he took that could be considered a publication was placing the memorandum in Captain Anderson's mailbox. Canzoneri thus contends that, unless he sent the

7

memorandum to Chief Weinstein, he cannot be liable for defamation. Canzoneri further argues that "no liability attaches to the author of a libel for such reproduction, unless it is made by his authority or consent, either express or implied." *Oberman v. Dun & Bradstreet, Inc.*, 586 F.2d 1173, 1175 (7th Cir. 1978) (citation omitted).

However, it is a genuine issue of material fact as to whether Canzoneri gave his implied consent to forward the memorandum to Chief Weinstein; Canzoneri's memorandum states that he would like to follow up with Ernst's department and lodge a formal complaint. Ernst's claim also seeks to hold Canzoneri liable for conspiracy to defame; it is a genuine issue of material fact as to whether Canzoneri's statement asking to follow up with Ernst's department is evidence of such a conspiracy.

Canzoneri contends that any publication he made in the memorandum to Captain Anderson is protected by a conditional privilege. Illinois applies the approach of the Second Restatement of Torts in determining whether a conditional privilege exists. *Jones v. W. & S. Life Ins. Co.*, 91 F.3d 1032, 1035 (7th Cir. 1996) (*Jones*). In determining whether a conditional privilege exists, a court only looks at the "occasion itself for the communication and decides as a matter of law and general policy whether the occasion created some recognized duty or interest to make the communication privileged." *Jones*, 91 F.3d at 1035. If a privilege exists, a factual issue exists concerning whether the privilege was abused. *See Jones*, 91 F.3d at 1035.

Conditional privileges arise in three general situations: (1) some interest of the person who publishes the defamatory matter is involved, (2) some interest of the person to whom the matter is published or a third person is involved, and (3) a recognized interest of a third party is involved. *Jones*, 91 F.3d at 1035. Section 598A of the Second Restatement of Torts also

8

Case: 1:02-cv-04884 Document #: 133 Filed: 03/03/05 Page 9 of 12 PageID #:1214

provides that "[a]n occasion makes a publication conditionally privileged if an inferior

administrative officer of a state or any of its subdivisions . . . makes a defamatory communication

required or permitted in the performance of his official duties." Here, the occasion of police

officers reporting suspected police misconduct, as Canzoneri did in his memorandum, is

privileged. Police officers should be encouraged to report suspected police misconduct to their

superiors because the public has an interest in police officers' acting in a proper and lawful

manner.

This conditional privilege may be abused if the person authoring the defamatory

statements shows a reckless disregard for the defamed party's rights, such as failing to investigate

the truth of the statements. *Kuwik v. Starmark Mtkg. & Admin., Inc.*, 619 N.E.2d 120, 136 (Ill.

1993). As discussed above, this issue is a factual determination. Here, it is undisputed that

Canzoneri did not actually observe Ernst in the company of people smoking marijuana or causing

a disturbance at the concert. These charges were later determined to be unfounded. Therefore, a

genuine issue of material fact exist as to whether Canzoneri properly investigated the truth of his

statements.

Canzoneri further argues that, because the "gist" of his memorandum was true, there can

be no defamation. Under Illinois law, if the publication is substantially true, then there can be no

defamation. *Pope v. Chronicle Publ'g Co.*, 95 F.3d 607, 613-14 (7th Cir. 1996). Canzoneri

contends that his memorandum was substantially true because: (1) Ernst attended a concert,

(2) Ernst did arrive at the hospital emergency room and identify himself as an internal affairs

officer, and (3) Ernst had consumed alcohol. None of these issues are material to the defamation

claim; rather, Ernst contends that the marijuana and disturbance statements in the memorandum

9

are the defamatory statements. Canzoneri further argues that Ernst testified that the defamation

spawned from the rumor that Ernst was "smoking pot and caused a fight at the arena" and not

from the memorandum. Def.'s Mot. at 9; Def.'s Ex. B, Ernst. Dep at 34-35. However, there is a

genuine issue of material fact as to whether the memorandum spawned these rumors; Ernst

testified that the rumors arose because the memorandum was sent to his department. Def.'s Ex.

B, Ernst. Dep at 34-35.

Finally, Canzoneri contends that he is immune from liability under a number of sections

in the Illinois Governmental and Governmental Employees Tort Immunity Act.

745 ILCS 10/2-201; 745 ILCS 10/2-202; 745 ILCS 10/2-204; 745 ILCS 10/2-208; 745 ILCS

10/2-210; 745 ILCS 10/2-212.

Section 10/2-201 provides that no liability will be incurred by a public employee when

"an injury result[s] from his act or omission in determining policy when acting in the exercise of

such discretion even if abused." Immunity will only apply if the actor is both determining a

policy and exercising his discretion. *E.g.*, *Ellis v. City of Chicago*, 272 F. Supp. 2d 729, 735

(N.D. Ill. 2003). Canzoneri has not demonstrated with his affidavits, depositions, answers to

interrogatories, and admissions that he was determining a policy when he submitted his

memorandum.

Section 10/2-202 provides that a "public employee is not liable for his act or omission in

the execution or enforcement of any law unless such act or omission constitutes willful or

wanton conduct." Under 745 ILCS 10/1-210, willful or wanton conduct is defined as "a course

of action which shows an actual or deliberate intention to cause harm or which, if not intentional,

shows an utter indifference to or conscious disregard for the safety of others . . . ." Here, it is

10

undisputed that Canzoneri wrote his memorandum and delivered it to Captain Anderson without having firsthand knowledge of all the allegations made in the memorandum. Genuine issues of material fact also exist as to Canzoneri's motives for writing the memorandum. Accordingly, genuine issues of material fact exist as to whether Canzoneri's actions constitute willful or wanton conduct.

Section 10/2-204 provides that a public employee "is not liable for an injury caused by the act or omission of another person." Ernst, though, is alleging that Canzoneri is liable for writing the memorandum. As such, this provision is inapplicable.

Section 10/2-208 provides that a public employee is not liable for instituting an administrative proceeding unless he acts maliciously and without probable cause. As discussed above, genuine issues of material fact exist as to Canzoneri's motives for writing the memorandum and Canzoneri's knowledge and proof of the events described in the memorandum. Accordingly, genuine issues of material fact exist as to whether Canzoneri acted maliciously and without probable cause in writing the memorandum.

Section 10/2-210 provides that a public employee "is not liable for an injury caused by his negligent misrepresentation of the provision of information . . . ." This section is only applicable for negligent misrepresentations and not intentional or reckless misrepresentations. *Drillis-Eizes v. Village of Orland Hills*, 94 C 6212, 1995 WL 88800, at * (N.D. Ill. Mar. 1, 1995). As discussed above, genuine issues of material fact exist as to Canzoneri's basis for writing the memorandum and Canzoneri's knowledge and proof of the events described in the memorandum. As such, genuine issues of material fact exist as to whether Canzoneri intentionally or recklessly made misrepresentations in defaming Ernst.

11

Lastly, section 10/2-212 states that the provisions "which define or limit the liability of a public employee in terms of his doing of an act or failure to act apply to public employees who function jointly, in conjunction or in collaboration with other employees, as well as to those who function singly." Because genuine issues of material fact exist as to the applicability of the other immunity provisions, it would not be appropriate to grant summary judgment based on Section 10/2-212.

## CONCLUSION

For the foregoing reasons, Canzoneri's Motion for Summary Judgment is granted in part and denied in part. Canzoneri is granted summary judgment on Count VIII of Plaintiff's Second Amended Complaint.

Dated: _March 3, 2005_

JOHN W. DARRAH
United States District Judge

12